IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ronald I. Paul, | ) | C/A No. 3:13-1852-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Transportation; Paul D. de Holczer, Esq., individually and as a partner of the law Firm of Moses Koon & Brackett PC; G. L. Buckles, as Personal Representative of the Estate of Keith J. Buckles and G. L. Buckles, individually; Michael H. Quinn, individually and as Senior lawyer of Quinn Law Firm LLC; J. Charles Ormond, Jr., Esq., individually and as a partner of the Law Firm of Holler, Dennis, Corbett, Ormond, Plante & Garner; Oscar K. Rucker, in his individual capacity as Director, Rights of Way South Carolina Department of Transportation; Macie M. Gresham, in her individual capacity as Eastern Region Right of Way Program Manager, South Carolina Department of Transportation; Natalie J. Moore, in her individual capacity as Assistant Chief Counsel, South Carolina Department of Transportation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

The plaintiff, Ronald I. Paul ("Paul"), a self-represented litigant, filed this action alleging claims of civil conspiracy stemming from a state condemnation of land leased by Paul. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. For the reasons that follow, the court concludes that this matter should be summarily dismissed without prejudice and without issuance and service of process.



I.      Factual and Procedural Background

The allegations in this action are almost identical to those raised by Paul in Civil Action Nos. 3:12-1036-CMC-PJG [hereinafter Paul I] and 3:13-367-CMC-PJG [hereinafter Paul II], which were both dismissed without prejudice for failure to state a claim.[1]  As explained in the previous cases, Paul's claims arise out of the 2002 condemnation of land that Paul was renting and the subsequent litigation.  Paul filed this action against the above defendants alleging that their actions in the condemnation litigation constituted a civil conspiracy to violate Plaintiff's constitutional rights. Paul lists the defendants as follows:  South Carolina Department of Transportation ("SCDOT"); Defendant Rucker (individually, as Director of Rights of Way, SCDOT); Defendant Gresham (individually, as the Eastern Region Right of Way Program Manager, SCDOT); Defendant Moore (individually, as Assistant Chief Counsel, SCDOT); Defendant de Holczer (individually, and as a partner of the law firm of Moses, Koon & Brackett, P.C.); Defendant Buckles (individually, and as personal representative of the Estate of Keith J. Buckles); Defendant Quinn (individually, and as senior lawyer of the Quinn Law Firm, LLC); and Defendant Ormond (individually, and as a partner of the law firm of Holler, Dennis, Corbett, Ormond, Plante & Garner).

In order to more efficiently address Paul's claims, the court has developed the following time line from the Complaint:

7/3/85      Paul leased premises at 2115 Two Notch Road, Columbia, South Carolina, from Keith J. Buckles, now deceased.  Paul opened a liquor store on the premises.

9/7/02      Rucker wrote to Paul advising him that his building would be removed and requested that he vacate the property.  Paul responded, in writing, and requested damages.

---

[1]  A court may take judicial notice of its own books and records.  Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'") (citation omitted).



| | |
|---|---|
| 10/2/02 | Defendants SCDOT, Rucker, Gresham, Moore and de Holczer filed an action pursuant to the South Carolina Eminent Domain Procedures Act against Keith J. Buckles and Defendant Buckles (Case No. 2002-CP-400-4800, hereinafter "Case 4800"). |
| 10/14/02 | Rucker wrote to Paul advising him that his building would be removed and requested that he vacate the property.  Paul responded, in writing, and requested damages. |
| 10/21/02 | SCDOT, Rucker, Gresham, Moore and de Holczer amended Case 4800 to add Paul as a party.  Paul claims that, because Rucker, Gresham and Moore "acknowledged they assisted in the prosecution" of this case and did not "'delegate any state authority,'" they violated his constitutional rights as individuals. (ECF No. 1 at 11, n.1.) |
| 11/19/02 | Paul filed an answer and counterclaim in Case 4800.  When Plaintiff asked Gresham about the payment of damages, she replied that "'she would have to get with her legal department.'"  (ECF No. 1 at 12.) |
| 6/21/03 | Paul received an eviction notice from de Holczer and Gresham. |
| 10/13/03 | Judge Reggie Lloyd presided over an eviction hearing. |
| 10/28/03 | The eviction order was filed. |
| 11/13/03 | After consultation, Defendant Ormond told Paul that Paul was entitled to damages.  Paul hired Ormond to represent him with regard to Paul's claim against SCDOT. |
| 2/04 | Ormond told Paul that de Holczer and Quinn told Ormond at a roster meeting that "the state officials and defendants de Holczer and Quinn/Buckles had already settled the case for just compensation."  (Id.)  Paul told Ormond that he had not been offered just compensation.  Ormond counseled Paul to sue [Keith] Buckles, but Paul told Ormond to proceed with his claim against SCDOT.<br><br>Keith Buckles told Paul that he had settled the case with SCDOT; that the settlement did not include Paul's claim for loss of his liquor license, but only included the land and two buildings; and that Paul was not entitled to any portion of his settlement.  Keith Buckles added that, under the agreement, Keith Buckles was required to aid SCDOT "with any interests or rights that someone may claim they have" in the premises.  (Id. at 15.) |
| 3/04 | When Ormond reiterated his advice, Plaintiff again declined it, and Ormond advised Paul that he would have to withdraw as counsel. |

Paul contends that, based on the above timeline, "the state officials and the private individuals acted jointly in concert and, entered into a conspiratorial agreement" to deprive Paul of his Fifth and Fourteenth Amendment rights.[2]  (Id.)  In spite of a decision against him in Case 4800, and lost appeals (see SCDOT v. Buckles, No. 2006-UP-360 (S.C. Ct. App. Oct. 23, 2006), aff'd, No. 2009-UP-228 (S.C. May 27, 2009), writ of cert. denied, No. 11-7921 (Apr. 16, 2012)), Paul alleges that his rights were not affected by the settlement agreement.

| | |
|---|---|
| 9/7/04 | Paul states that, prior to the roster hearing on this date, "the state officials and the private individuals had met together, schemed and conspired for the purpose of planning to mislead Judge Lee and to bribe[] Judge Lee, by claiming and declaring the case had settled for just compensation without Paul['s] consent or approval." (ECF No. 1 at 18.)  Paul contends this meeting was a continuation of the conspiracy. At the roster meeting, "the state officials and private individuals" told Judge Lee that a settlement had been reached as to just compensation, although they all knew Paul had rejected the settlement.[3]  (Id.)  Paul adds that "the state officials and defendant[] de Holczer" wrongly convinced Judge Lee that Paul was not entitled to a jury trial, and Paul was damaged thereby.  (Id.)  Paul claims that Ormond's advice to him that he had no right to an interlocutory appeal proves that he was a co-conspirator. |
| 10/8/04 | SCDOT, Rucker, Gresham, Moore and de Holczer deposed expert witnesses engaged by Paul. |
| 10/14/04 | Paul claims that, prior to this date, "the state officials and the private individuals met together, schemed and conspired for the purpose of planning to mislead Judge Lloyd and to bribe[] Judge Lloyd, by claiming and declaring the case had settled for just compensation."  (Id. at 23.) |
| | Paul finds further evidence of conspiracy is shown in "the state officials and the private individuals" advising Judge Lloyd that they had agreed to hold a trial on the separate issues of just compensation and to whom and how much compensation should be paid, when Judge Barber had previously entered an order bifurcating these issues. |

---

[2] Paul states that he "documented this" in Paul I and Paul II. (ECF No. 1 at 22.)

[3] Paul states that he "documented this" in Paul I and Paul II. (ECF No. 1 at 19.)

       Paul states that the defendants threatened his expert witnesses with criminal fine and/or prosecution should they testify and, thus, they did not. Paul claims he was damaged thereby.

       Paul contends that further evidence of the conspiracy is seen in the motion put forth by "the state officials and defendant de Holczer" to "issue a predetermined order of the settlement agreement." (Id. at 28.)

Paul alleges that his attorney, Ormond, was part of the conspiracy because he argued against Paul's claim for damages against SCDOT. Paul instructed Ormond to "set the court record straight about the false statements [Ormond] had made on October 14, 2004." (Id. at 30.)

| | |
|---|---|
| 10/20/04 | Judge Lloyd granted the October 14, 2004 motion, which Paul claims is an indication that "the state officials and the private individuals had bribed Judge Lloyd," in violation of Paul's rights. (Id. at 31.) He adds that Defendants Quinn and Buckles participated in the bribery by agreeing with the motion, and Defendant Ormond participated in the bribery by agreeing to dismiss Paul's "damages admitted into evidence." (Id.) Paul contends, "The state officials and defendant de Holczer could not have escaped Paul['s] damages of $310,000.00 admitted into evidence by the trial judge, without joint[] participation of the private individual[s'] bribery of Judge Lloyd." (Id.) |
| 3/11/05 | Not mentioned by Paul, but found in Paul I, Judge Lloyd "determined and awarded Paul $2,450 for his leasehold interest in the [premises]." (Paul I, ECF No. 116 at 4 (citing Case 4800).) |
| 10/07 | Paul claims that, in furtherance of the conspiracy, Quinn and Buckles filed a motion to disburse the settlement agreement, and SCDOT, Rucker, Gresham, Moore and de Holczer agreed to this motion. |
| 1/8/08 | At the motion hearing, Paul contends the conspiracy continued when Quinn, Buckles, SCDOT, Rucker, Gresham, Moore, de Holczer and Ormond falsely claimed that Paul had agreed to the amount of compensation and the allocation as set forth in Judge Lloyd's order. |

*PJG*

| | |
|---|---|
| 1/28/08 | Not mentioned by Paul, but found in <u>Paul I</u>, "[F]ollowing a motion hearing, the court approved the disbursement of the condemnation proceeds."[4]  (<u>Paul I</u>, ECF No. 116 at 4 (citing Case 4800).) |
| 1/25/10 | Paul filed a motion pursuant to South Carolina Rule of Civil Procedure 60(b) to set aside Judge Cooper's and Judge Lloyd's orders. |
| 2/22/10 | Paul filed an amended Rule 60(b) motion to set aside Judge Cooper's and Judge Lloyd's orders. |
| 3/24/10 | Without any response from the defendants, Judge Cooper denied Paul's motion. Paul states that he appealed this order, which appeal was denied by the state court of appeals.  The state supreme court denied Paul's petition for writ of certiorari. |
| 7/23/10 | Paul claims that, in furtherance of the conspiracy, Quinn, Buckles, SCDOT, Rucker, Gresham, Moore and de Holczer filed motions for injunctive relief to preclude Paul from taking further action in Case 4800, "in violation of Title 18, United States Code, Section 241 Conspiracy Against Rights and 42 USC 1985, 1986." (ECF No. 1 at 38.) |
| 6/7/12 | Paul avers that, before this court, in an effort to "cover-up the conspiracy," SCDOT, Rucker, Gresham and Moore falsely stated that he was evicted for failure to pay rent in October 2003.  (<u>Id.</u> at 40.) |

Paul adds that, in 2004, Buckles filed an action against him for eviction, collection of past due rent, and insurance.  Paul responded that he did not pay the rent due to the ongoing condemnation action "that deprived him of his livelihood and income."[5]  (<u>Id.</u> at 45.)  Paul states that, in 2005, Buckles filed a second action against him with regard to "the 30 x 40 tenant-owned structures," for "collection of past due rent, taxes and insurance."  (<u>Id.</u> at 46.)  Paul avers that his

---

[4] Also not mentioned by Paul, but found in <u>Paul I</u>:  "Paul filed a civil action in state court (2008-CP-40-1259) alleging four causes of action for civil conspiracy against the same defendants named in this action.  That action was dismissed, in part based on a determination that the claims were time-barred under the applicable statute of limitations."  (<u>Paul I</u>, ECF No. 116 at 4.)

[5] Paul unsuccessfully appealed the court's verdict in the landlord's favor for damages related to Paul's breach of the lease.  <u>Buckles v. Paul</u>, No. 2009-UP-226 (S.C. May 27, 2009).



property was transferred to the estate of Keith J. Buckles, and he wishes to recover for losses in the amount of $528,000 from the defendants.

Paul claims that he suffered loss in that he was not paid just compensation for his property; "state officials and private individuals fail[ed] to follow statutorily established and controlled procedural guidelines"; he was deprived of his federal and state rights to trial by jury and "to have expert witnesses testify in his behalf"; the defendants bribed Judge Lloyd; and the defendants conspired to deprive Paul of the equal protection of the laws. (Id. at 47-53.) He seeks declaratory judgments that mirror those set forth in his previous cases, and asks this court for awards of actual, consequential, special and punitive damages, fees and expenses. (Id. at 58-59.)

II.     Discussion

    A.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint. This court is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal,



556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Moreover, even when the filing fee is paid, the court possesses the inherent authority to ensure that a plaintiff has standing, that federal jurisdiction exists, and that a case is not frivolous. See Ross v. Baron, No. 12-1272, 2012 WL 3590914, at *1 (4th Cir. Aug. 22, 2012); see also Mallard v. U.S. Dist. Court, 490 U.S. 296, 307-08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

  B. Analysis

As in Paul I and Paul II, Plaintiff charges that the above-outlined actions show that the defendants conspired to deprive him of the subject property without just compensation. It appears that, in the instant case, Paul attempts to cure the defects of his complaints in these previous cases. However, as in his earlier cases, Plaintiff has failed to state a claim upon which this court can grant relief.

  1. Conspiracy under 42 U.S.C. § 1983

As Plaintiff was previously advised, to prevail on any claim pursuant to § 1983, a plaintiff must show: (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or



immunities secured by the Constitution and laws of the United States; (3) by a person acting under color of state law. See 42 U.S.C. § 1983. Conduct under color of state law may be extended to private individuals who conspire with state officials to violate an individual's constitutional rights. See Tower v. Glover, 467 U.S. 914, 920 (1984). "'To establish a conspiracy under [42 U.S.C.] § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in [the] deprivation of a constitutional right.'" Glassman v. Arlington Cnty., 628 F.3d 140, 150 (4th Cir. 2010) (alterations in original) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). The plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421. His factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan," and must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Id. at 422.

Paul has attempted to address the court's concern about his conclusory allegations. He points to Keith Buckles's statement that the settlement agreement required Keith Buckles to aid SCDOT in its claims against the premises. He claims that, prior to the September 2004 roster meeting, the defendants met, schemed and conspired to mislead and bribe Judge Lee. Paul interprets Ormond's advice to him as evidence that Ormond was a co-conspirator. Paul contends that, prior to the hearing before Judge Lloyd, the parties met, schemed and conspired to mislead and bribe

PJG

Judge Lloyd.[6]  He finds further evidence of the conspiracy in the defendants' motion to "issue a predetermined order of the settlement agreement" and their statements that Paul agreed with its terms.  According to Paul, Judge Lloyd's granting of the motion is evidence that the defendants bribed the judge.  Finally, Paul asserts that the defendants conspired to have the settlement proceeds disbursed and to file an injunction against him to preclude him from taking further action in Case 4800.

All of these actions, however, show only that the parties attempted to accomplish the goal of acquiring a property for use by the State.  There is no indication that Buckles was unhappy with the settlement; the only evidence is that Keith Buckles was contractually obligated to assist the State once he signed the settlement agreement.  Paul has set forth no evidence that Ormond had any motivation other than to ably represent Paul.  The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006); see also Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009).

---

[6] It appears that Paul added these bribery allegations in consideration of the following citation in Paul I:

> Paul has failed to allege sufficient facts to demonstrate an agreement or meeting of the minds among the defendants.  Cf. Dennis v. Sparks, 449 U.S. 24 (1980) (finding that allegations that the private party defendants bribed the state court judge causing him to issue a ruling in their favor were sufficient to survive a motion to dismiss).

Paul I (ECF No. 116 at 12.)  In Dennis, the lower court had dismissed the private party defendants because the judge had been dismissed on the basis of immunity.  The Court found that the judge's immunity did not extend to the private party defendants.  As the Dennis fact pattern is significantly different from that *sub judice*, Paul's allegations that the defendants bribed Judge Lloyd does not serve to bolster his conspiracy claims.



Moreover, Paul has failed to produce evidence that the defendants deprived him of a constitutional right. His eight years of proceedings in state courts, through to and including his petition before the United States Supreme Court, shows that he has thoroughly pursued his due process rights. Although he charges Judge Lloyd with wrongdoing, none of the appellate courts have so found. Clearly, Paul does not agree that he has been properly compensated for his loss of property, but he omitted from his Complaint that he was awarded compensation by the state court. The proper method for disputing this decision was via appeals and motions, which Paul pursued. This court refuses to believe that each judge and justice involved in Paul's cases incorrectly found that his condemnation proceedings were without reversible error. Paul has even brought his conspiracy claim in both the state and federal courts, and these courts have failed to sustain that claim.

Paul also alleges that the parties conspired to deprive him of the equal protection of the laws. A plaintiff alleging a violation of the Equal Protection Clause of the Fourteenth Amendment "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). The Complaint contains no such allegations; thus, Paul's equal protection claim has no merit.

    2.    Defendant SCDOT

As Paul was advised in Paul I, this state agency is immune from suit in this court. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials,



and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997) ("It has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As an arm of the State, SCDOT is entitled to sovereign immunity and cannot constitute a "person" under § 1983. Will, 491 U.S. at 70-71; see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e).

III.     Recommendation

Thus, the court recommends that the Complaint in the above-captioned case be summarily dismissed without prejudice and without issuance and service of process.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 5, 2013
Columbia, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).